IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JANICE PAIGE,                          :

    Plaintiff,                        :

vs.                                    :         CA 05-0098-C

JO ANNE B. BARNHART,   :
Commissioner of Social Security,

                                         :

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. 636(c), for all proceedings in this Court. (*See* Doc. 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and

recommendation, and the parties' arguments at the November 15, 2005 hearing before the Court, it is determined that the Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to bilateral carpal tunnel syndrome, fibromyalgia, and depression. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant's period of adjudication has extended from July 8, 2002, the alleged disability onset date, through the date of this decision. For the period of adjudication, an unfavorable decision is being issued at Step 5 of the sequential evaluation process.
>
> 2. The claimant has satisfied the threshold requirement of insured status within the relevant period of adjudication (Exhibit 3D).
>
> 3. The claimant did not engage in substantial gainful activity for Step 1 decisional purposes during the period of adjudication.
>
> 4. The claimant had the following "severe" medically-determinable impairment[s] during the period of adjudication: history of carpal tunnel syndrome; fibromyalgia vs. minimal osteoarthritic changes.
>
> 5. The claimant alleged headaches and depression as "severe"

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

conditions, but the same have not [been] established as entailing significant work-related limitations of record resulting from medically-determinable impairments for a continuous period of 12 months during the period of adjudication.

6.   No single medically-determinable impairment, or combination thereof, had the specific or equivalent severity of medical findings necessary to establish presumptive disability under the evaluative standards found in Appendix 1 of the Regulations during the period of adjudication.

7.   The claimant's testimony of subjective complaints and functional limitations, where inconsistent with the residual functional capacity of this decision, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility.

8.   During the period of adjudication, the claimant retained the residual functional capacity for a wide range of light exertion, with the standing/walking limits and non-exertional postural/environmental restrictions as set forth in Exhibit 14F, pp. 4-5. This work capacity was not prohibited or significantly altered by continuous 12-month periods of impairment exacerbation during the period of adjudication.

9.   To the extent that alcohol or substance abuse/addiction, if any, was a part of the claimant's medical history pertaining to the period of adjudication, the effects of such were not considered in the determination of residual functional capacity (20 CFR 404.1535 and 416.935).

10.   During the period of adjudication, the claimant presumably was unable to perform any category of her past relevant work.

11.   The claimant was a "younger" individual during the period of adjudication.

12.   The claimant had a "high school" level of education during the period of adjudication.

13.  During the period of adjudication, the transferability of past acquired work skills under the Medical-Vocational Guidelines was immaterial to the outcome of this case (compare Rules 202.20, 202.21, and 202.22).

14.  Considering the claimant's vocational factors and residual functional capacity, vocational rules 202.20, 202.21, and 202.22 of the Medical-Vocational Guidelines (Appendix 2) provided a framework for decision making within the period of adjudication. Within that framework, it is concluded that the claimant was able to perform representative occupations existing in significant numbers in the national economy during the period of adjudication, as illustrated by the testimony of an impartial vocational expert.

15.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 39-40) The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id*. at 1005. Once

the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform a wide range of light work, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, the plaintiff contends that the ALJ made the following errors: (1) he improperly rejected the treating physician's opinion; (2) he erred in finding her testimony not credible on the basis that there was no medical evidence to substantiate her complaints; (3) he erred in giving more weight to a one-time examining physician; (4) he substituted his own medical opinion for those of the physicians; and (5) he failed to follow the proper procedure for

5

evaluating a mental impairment. Because the ALJ erred to reversal in failing to follow the proper procedure for evaluating plaintiff's mental impairment of depression, this Court need not substantively address the other issues raised by plaintiff.[2] *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

Earlier this year, the Eleventh Circuit joined four of her sister circuits in holding that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions[]" and the "[f]ailure to do so requires remand." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (citations omitted). The

---

[2] The Court notes parenthetically that it agrees with plaintiff's argument that the ALJ effectively substituted his opinion for those of all examining physicians in determining that Paige has a history of carpal tunnel syndrome (Tr. 39), the evidence of record establishing a clear diagnosis of bilateral carpal tunnel syndrome (Tr. 179 & 186), and that she has "fibromyalgia vs. minimal osteoarthritic changes" (Tr. 39), the medical evidence of record establishing that she suffers from both fibromyalgia **and** osteoarthritis (*see, e.g.,* Tr. 146 & 149). On remand, the ALJ must acknowledge that plaintiff, based upon the diagnoses of the medical professionals in this case, at least experiences limitations related to the following severe impairments: bilateral carpal tunnel syndrome, fibromyalgia, and osteoarthritis. *See Marbury v. Sullivan*, 957 F.2d 837, 840-841 (11th Cir. 1992) (Johnson, Senior Circuit Judge, concurring specially) ("An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him *in his private or personal capacity*; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.").

Commissioner's regulations specifically provide that the PRTF or functional analysis contained therein must be done before an ALJ makes the determination about whether a mental impairment is severe or not severe. 20 C.F.R. § 404.1520a(d)(1) & (2) (2005) ("After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). (1) If we rate the degree of your limitation in the first three functional areas [activities of daily living; social functioning; and concentration, persistence, or pace] as 'none' or 'mild' and 'none' in the fourth area [episodes of decompensation], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . . (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder.").

In this case, nowhere does the ALJ perform the functional analysis of plaintiff's depression that is required by the Commissioner's own regulations and *Moore, supra*, because had he done so he would necessarily have to contend with plaintiff's allegations of her inability to concentrate (Tr. 262). While defendant makes much of the fact that the ALJ devoted a long paragraph to plaintiff's depression before finding same to be a non-severe impairment (*see* Tr. 30), this does nothing to advance her argument that this Court should affirm

the denial of benefits in light of *Moore's* unequivocal holding that an ALJ's failure to incorporate into his findings and conclusions the mode of analysis contained on the PTRF requires remand. That remand is appropriate in this case is heightened by the undisputed recognition that depression is a common symptom of fibromyalgia. *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997) ("Fibromyalgia is a type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbances, lack of concentration, changes in mood or thinking, anxiety and depression. . . . The depression and anxiety associated with fibromyalgia are believed to be symptoms of this muscular disease, rather than causes of it."); *see also Estok v. Apfel*, 152 F.3d 636, 637-638 (7th Cir. 1998) ("At some point in time, Estok started to experience diffuse pain throughout her body, including pain in her hips, back, neck, arms, and hands, along with headaches, sleep disturbance, and depression. These problems were manifestations of fibromyalgia which may have been a new condition."); *see Dorsey v. Provident Life & Acc. Ins. Co.*, 167 F.Supp.2d 846, 855 (E.D. Pa. 2001) ("Dr. Beecher's cursory report did not discuss the significance of plaintiff's irritable bowel syndrome, migraine headaches, and major depression--all symptoms that support a diagnosis of fibromyalgia."). If nothing else, the

fact that depression, and migraine headaches for that matter,[3] are symptoms of fibromyalgia necessitate that the ALJ, on remand, include such impairments and associated limitations in hypothetical questions posed to a vocational expert. Accordingly, this case is remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

## CONCLUSION

The Court **ORDERS** that the decision of the Commissioner of Social Security denying claimant benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct.

---

[3] It is interesting to the Court that the ALJ concluded that plaintiff's migraine headaches are not a severe impairment particularly when the wealth of information of record related to this impairment (*see, e.g.*, Tr. 182, 206 & 216) is compared to the minimal threshold showing required, *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). The ALJ's finding, with respect to both plaintiff's migraines and her depression, that the evidence of record does not establish "such severity as to preclude basic work-related activities for a period of 12 consecutive months" (Tr. 30) loses much of its force when one considers that these impairments are symptoms of plaintiff's fibromyalgia. Moreover, the regulations do not require, for purposes of determining that an impairment is severe, that the impairment has lasted for a continuous period of twelve months but only that the impairment can be expected to last for a period of twelve consecutive months. *Compare* 20 C.F.R. § 404.1520(a)(4)(ii) (2005) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 . . . we will find that you are not disabled.") *with* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or **must be expected to last** for a continuous period of at least 12 months. We call this the duration requirement.") (emphasis supplied). Since Paige's fibromyalgia has admittedly lasted for twelve continuous months, the Court would suggest to the Commissioner that her depression and migraine headaches have lasted or could be expected to last for twelve continuous months.

2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 18th day of November, 2005.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**